NA

**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Oscar Amaro, | No. CV 14-2302-PHX-DGC (DMF) |
| Plaintiff, | |
| v. | **ORDER** |
| Joseph M. Arpaio, et al., | |
| Defendants. | |

On October 16, 2014, Plaintiff Oscar Amaro, who is confined in the Arizona State Prison Complex-Lewis, filed a *pro se* civil rights Complaint pursuant to 42 U.S.C. § 1983 and an Application to Proceed *In Forma Pauperis*. In a November 7, 2014 Order, the Court denied the deficient Application to Proceed and gave Plaintiff 30 days to pay the required fees or file a complete Application to Proceed *In Forma Pauperis*. On November 19, 2014, Plaintiff filed a second Application to Proceed. In a January 28, 2015 Order, the Court denied the deficient Application to Proceed and gave Plaintiff 30 days to pay the required fees or file a complete Application to Proceed *In Forma Pauperis*. On March 5, 2015, Plaintiff filed a third Application to Proceed *In Forma Pauperis*. In an April 27, 2015 Order, the Court granted the Application to Proceed and dismissed the Complaint with leave to amend. The Court gave Plaintiff 30 days to file an amended complaint that cured the deficiencies identified in the Order.

. . . .

**TEMPSREF**

On June 9, 2015, Plaintiff filed his First Amended Complaint. In a June 18, 2015 Order, the Court dismissed the First Amended Complaint with leave to amend.

On July 15, 2015, Plaintiff filed an unsigned Second Amended Complaint (Doc. 19). In an August 4, 2015 Order, the Court gave Plaintiff 30 days to file a completed, signed Certificate, certifying that Plaintiff's signature on the Certificate shall serve as an original signature on his Second Amended Complaint for the purposes of Rule 3.4 of the Local Rules of Civil Procedure and Rule 11 of the Federal Rules of Civil Procedure. On August 25, 2015, Plaintiff filed the signed Certificate.

**I.       Statutory Screening of Prisoner Complaints**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or an employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if a plaintiff has raised claims that are legally frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1)–(2).

A pleading must contain a "short and plain statement of the claim *showing* that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) (emphasis added). While Rule 8 does not demand detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

"[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Thus, although a plaintiff's

TEMPSREF

1  specific factual allegations may be consistent with a constitutional claim, a court must
2  assess whether there are other "more likely explanations" for a defendant's conduct.  *Id.*
3  at 681.

4  But as the United States Court of Appeals for the Ninth Circuit has instructed,
5  courts must "continue to construe *pro se* filings liberally."  *Hebbe v. Pliler*, 627 F.3d 338,
6  342 (9th Cir. 2010).  A "complaint [filed by a *pro se* prisoner] 'must be held to less
7  stringent standards than formal pleadings drafted by lawyers.'"  *Id.* (quoting *Erickson v.*
8  *Pardus*, 551 U.S. 89, 94 (2007) (*per curiam*)).

## II. Second Amended Complaint

In his three-count Second Amended Complaint, Plaintiff sues Maricopa County Sheriff Joseph M. Arpaio and the following officers at the Maricopa County Fourth Avenue Jail: Classification Detention Officer Jane Doe, Detention Officer Graham, and Classification Detention Supervisor John Doe.  Plaintiff seeks monetary damages and litigation costs.

In **Count One**, Plaintiff asserts an Eighth Amendment deliberate indifference claim and alleges that on August 13, 2013, Plaintiff was housed in the protective segregation facility at the Arizona State Prison Complex-Lewis.  Plaintiff was subsequently transferred to the Maricopa County Fourth Avenue Jail to attend a court hearing.  Upon arrival at the Fourth Avenue Jail, Defendant Jane Doe screened Plaintiff, and Plaintiff informed Defendant Jane Doe that he "needed" to be housed in protective segregation.  Plaintiff told Defendant Jane Doe that he was housed in protective segregation in prison because he was on the New Mexican Mafia's "hit list."  Defendant Jane Doe asked Plaintiff to put his reasons for his request for protective segregation in writing, which Plaintiff did.  He wrote that he needed to be housed in protective segregation because the New Mexican Mafia "had a 'contract' out on his life," he was housed in protective segregation while in prison, "there had been multiple attempts at taking his life in the past," and that it was "absolutely necessary" that he be housed in protective segregation "to protect him from an obvious substantial risk of harm."

TEMPSREF

- 3 -

1    Defendant Jane Doe denied Plaintiff's request for protective segregation and stated
2 that "she could not house him at the Lower Buckeye Jail because of his history."
3 Plaintiff "pleaded" with Defendant Jane Doe and explained to her that he was in fear for
4 his life.  Defendant Jane Doe then told Plaintiff that her supervisor, Defendant John Doe,
5 denied his request for protective segregation.  Plaintiff claims that Defendants Jane and
6 John Doe did not have a "legitimate institutional interest" or a "valid reason" for denying
7 his request for protective segregation and that they "disregarded [his] safety."  Plaintiff
8 was housed at the Fourth Avenue Jail, and, on December 25, 2015, he was assaulted by
9 several inmates.  Plaintiff was subsequently transferred to the Lower Buckeye Jail.

10    Plaintiff claims that it is "customary practice" of the Maricopa County Sheriff's
11 Office ("MCSO") to place prisoners in protective segregation if they were previously
12 housed in protective segregation in prison.  Plaintiff further claims that "it is common
13 knowledge at the MCSO that the [New Mexican Mafia] operates within its jails and
14 frequently has prisoners on the 'hit list' assaulted and killed," and Defendants Jane and
15 John Doe knew of these "facts."  Defendant Jane and John Doe promulgated,
16 implemented, or enforced "vague rules, directives, instructions, and office polic[i]es."

17    As a result of being assaulted, Plaintiff suffered an abdominal hernia, blurred
18 vision, chronic headaches, pain, anxiety, and weight loss.

19    In **Count Two**, Plaintiff asserts an Eighth Amendment deliberate indifference
20 claim and incorporates the facts alleged in Count One.  Plaintiff was housed in general
21 population at the Fourth Avenue Jail, and his "dayroom period" was in the evenings.  On
22 December 25, 2013, during Plaintiff's dayroom period, Defendant Graham let several
23 inmates out of their cell who he was not supposed to let out, and these inmates assaulted
24 Plaintiff.  The incident was videotaped, and there are several documents proving that
25 Plaintiff was assaulted.  After the incident, Defendant Graham verbally apologized to
26 Plaintiff for accidentally letting the other inmates out of their cell.  However, Plaintiff
27 contends that Defendant Graham intentionally let the other inmates out of their cells and
28 that detention officers at the Fourth Avenue Jail "have a history of aiding, abiding, and

**TEMPSREF**

1  providing means and opportunity for the New Mexican Mafia to carry out their assaults
2  and even killings of inmates[,] such as Plaintiff[,] who are on the 'hit list.'" Plaintiff
3  claims that Defendant Graham knew these inmates would assault Plaintiff when he
4  opened their cell doors. Plaintiff further contends that Defendant Graham was
5  "obviously an accomplice to this cold[,] calculated assault" and that he opened the other
6  inmates' cells to assist them in assaulting Plaintiff.

7  As noted above, as a result of being assaulted, Plaintiff suffered an abdominal
8  hernia, blurred vision, chronic headaches, pain, anxiety, and weight loss.

9  In **Count Three**, Plaintiff asserts an Eighth Amendment deliberate indifference
10 claim and incorporates the facts alleged in Counts One and Two. Plaintiff further alleges
11 the following facts: Defendant Arpaio is "in charge" of the Fourth Avenue Jail and the
12 detention officers who carry out his directives and is responsible for MCSO's procedures.
13 Defendants Jane and John Doe, who were acting in accordance with Defendant Arpaio's
14 directives, wrongfully denied Plaintiff's request for protective segregation "utilizing the
15 policies, practices, and customs implemented, created[,] and/or enforced by [D]efendant
16 Arpaio." It is Defendant Arpaio's responsibility to ensure Plaintiff's safety, and he
17 directed Defendants Jane and John Doe to deny Plaintiff's request for protective
18 segregation. Defendant Arpaio implemented, created, and/or enforced "restrictive
19 [protective segregation] policies[,] practices[,] and/or customs that unnecessarily limit"
20 officers' "discretionary authority" to grant an inmate's legitimate request for protective
21 segregation. Plaintiff claims that Defendant Arpaio promulgated, implemented, or
22 enforced "vague rules, directives, instructions, and office polic[i]es."

23 As noted above, as a result of being assaulted, Plaintiff suffered an abdominal
24 hernia, blurred vision, chronic headaches, pain, anxiety, and weight loss.

25 **III.   Failure to State a Claim**

26 Although *pro se* pleadings are liberally construed, *Haines v. Kerner*, 404 U.S. 519,
27 520-21 (1972), conclusory and vague allegations will not support a cause of action. *Ivey*
28 *v. Bd. of Regents of the Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982). Further, a

**TEMPSREF**

- 5 -

liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled. *Id*.

A plaintiff must allege that he suffered a specific injury as a result of the conduct of a particular defendant and he must allege an affirmative link between the injury and the conduct of that defendant. *Rizzo v. Goode*, 423 U.S. 362, 371-72, 377 (1976). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. "A plaintiff must allege facts, not simply conclusions, that show that an individual was personally involved in the deprivation of his civil rights." *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998).

### A.     Defendant Graham

A claim for threat to safety arises under the Fourteenth Amendment as to pretrial detainees and under the Eighth Amendment as to convicted inmates. *Bell v. Wolfish*, 441 U.S. 520, 535 and n. 16 (1979). Nevertheless, the same standards are applied, requiring proof that the defendant acted with deliberate indifference. *See Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir.1998). To state a claim for failure to protect or threats to safety, an inmate must allege facts to support that he was incarcerated under conditions posing a substantial risk of harm and that prison officials were "deliberately indifferent" to those risks. *Farmer v. Brennan*, 511 U.S. 825, 832-33 (1994). To adequately allege deliberate indifference, a plaintiff must allege facts to support that a defendant knew of, but disregarded, an excessive risk to inmate safety. *Id*. at 837. That is, "the official must both [have been] aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed], and he must also [have] draw[n] the inference." *Id*. Thus, Plaintiff must allege facts to support when and how any particular defendant knew of a substantial risk of harm to Plaintiff and that the defendant disregarded or failed to take steps to protect Plaintiff.

Plaintiff's allegations against Defendant Graham in Count Two are too conclusory to state a threat-to-safety claim. Plaintiff alleges that Defendant Graham, knowing the

**TEMPSREF**

inmates would assault Plaintiff, intentionally let the inmates out of their cells and was an accomplice to the assault.  But this conclusory allegation is not supported by factual allegations showing that Defendant Graham was aware of an excessive risk to Plaintiff's safety and disregarded it. Plaintiff fails to allege how Defendant Graham knew the inmates were going to assault him.  Nor does Plaintiff allege that he told Defendant Graham that he was on the New Mexican Mafia's hit list, that he feared for his safety, or that Defendant Graham knew about Plaintiff's request for protective segregation or the facts he cited in his request.   Accordingly, the Court will dismiss Defendant Graham and Count Two.

### B.     *Respondeat Superior*

There is no *respondeat superior* liability under § 1983, and therefore, a defendant's position as the supervisor of persons who allegedly violated Plaintiff's constitutional rights does not impose liability.  *Monell*, 436 U.S. at 691-92 (1978); *Hamilton v. Endell*, 981 F.2d 1062, 1067 (9th Cir. 1992); *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).  "Because vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. To the extent Plaintiff is attempting to hold Defendant Arpaio vicariously liable for Defendant Jane and John Does actions in Count Three, he fails to state a claim.  Accordingly, the Court will dismiss that portion of Count Three.

### IV.    **Claims for Which an Answer Will be Required**

Liberally construed, Plaintiff has sufficiently stated a threat-to-safety claim based on a policy, practice, or custom against Defendant Arpaio, and the Court will require Defendant Arpaio to answer Count Three.

### V.     **Unknown Defendants**

In Count One, Plaintiff has named Defendants Jane and John Doe and has made allegations against them that, liberally construed, sufficiently assert a threat-to-safety claim.  However, the Court will not direct that service be made on these Doe Defendants

**TEMPSREF**

at this time. Generally, the use of Doe-type appellations to identify defendants is not favored, and as a practical matter, it is in most instances impossible for the United States Marshal to serve a summons and complaint upon an unknown defendant.  However, the Court will not, *sua sponte*, dismiss the claims against these Defendants at this time. *See Wakefield v. Thompson*, 177 F.3d 1160, 1163 (9th Cir. 1999) (citing *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980)) (where identity of alleged defendants will not be known prior to filing of complaint, plaintiff should be given an opportunity through discovery to identify the unknown defendants, unless it is clear that discovery would not uncover the identities, or that the complaint would be dismissed on other grounds).

Plaintiff may use the discovery process to obtain the names of Defendants Jane and John Doe.  If Plaintiff later discovers the identity of Defendants Jane and/or John Doe, Plaintiff should seek to amend his Second Amended Complaint to name them, in compliance with Rule 15 of the Federal Rules of Civil Procedure.

**VI.    Warnings**

**A.    Release**

If Plaintiff is released while this case remains pending, and the filing fee has not been paid in full, Plaintiff must, within 30 days of his release, either (1) notify the Court that he intends to pay the unpaid balance of his filing fee within 120 days of his release or (2) file a non-prisoner application to proceed *in forma pauperis*.  Failure to comply may result in dismissal of this action.

**B.    Address Changes**

Plaintiff must file and serve a notice of a change of address in accordance with Rule 83.3(d) of the Local Rules of Civil Procedure.  Plaintiff must not include a motion for other relief with a notice of change of address.  Failure to comply may result in dismissal of this action.

**TEMPSREF**

1  **C.    Copies**

2     Because Plaintiff is currently confined in an Arizona Department of Corrections
3  unit subject to General Order 14-17, Plaintiff is not required to serve Defendants with a
4  copy of every document he files or to submit an additional copy of every filing for use by
5  the Court, as would ordinarily be required by Federal Rule of Civil Procedure 5 and
6  Local Rule of Civil Procedure 5.4.  If Plaintiff is transferred to a unit other than one
7  subject to General Order 14-17, he will be notified of the requirements for service and
8  copies for the Court that are required for inmates whose cases are not subject to General
9  Order 14-17.

10    **D.    Possible Dismissal**

11    If Plaintiff fails to timely comply with every provision of this Order, including
12 these warnings, the Court may dismiss this action without further notice.  *See Ferdik v.*
13 *Bonzelet*, 963 F.2d 1258, 1260-61 (9th Cir. 1992) (a district court may dismiss an action
14 for failure to comply with any order of the Court).

15 **IT IS ORDERED:**

16    (1)    Count Two is **dismissed** without prejudice.
17    (2)    Defendant Graham is **dismissed** without prejudice.
18    (3)    Defendant Arpaio must answer Count Three.
19    (4)    The Clerk of Court must send Plaintiff this Order, and a copy of the
20 Marshal's Process Receipt & Return form (USM-285) and Notice of Lawsuit & Request
21 for Waiver of Service of Summons form for Defendant Arpaio.
22    (5)    Plaintiff must complete and return the service packet to the Clerk of Court
23 within 21 days of the date of filing of this Order.  The United States Marshal will not
24 provide service of process if Plaintiff fails to comply with this Order.
25    (6)    If Plaintiff does not either obtain a waiver of service of the summons or
26 complete service of the Summons and Second Amended Complaint on Defendant Arpaio
27 within 120 days of the filing of the Complaint or within 60 days of the filing of this
28

**TEMPSREF**

Order, whichever is later, the action may be dismissed as to each Defendant not served. Fed. R. Civ. P. 4(m); LRCiv 16.2(b)(2)(B)(ii).

(7) The United States Marshal must retain the Summons, a copy of the Second Amended Complaint, and a copy of this Order for future use.

(8) The United States Marshal must notify Defendant Arpaio of the commencement of this action and request waiver of service of the summons pursuant to Rule 4(d) of the Federal Rules of Civil Procedure. The notice to Defendants must include a copy of this Order. **The Marshal must immediately file signed waivers of service of the summons. If a waiver of service of summons is returned as undeliverable or is not returned by Defendant Arpaio within 30 days from the date the request for waiver was sent by the Marshal, the Marshal must**:

    (a) personally serve copies of the Summons, Second Amended Complaint, and this Order upon Defendant Arpaio pursuant to Rule 4(e)(2) of the Federal Rules of Civil Procedure; and

    (b) within 10 days after personal service is effected, file the return of service for Defendant Arpaio, along with evidence of the attempt to secure a waiver of service of the summons and of the costs subsequently incurred in effecting service upon Defendant Arpaio. The costs of service must be enumerated on the return of service form (USM-285) and must include the costs incurred by the Marshal for photocopying additional copies of the Summons, Second Amended Complaint, or this Order and for preparing new process receipt and return forms (USM-285), if required. Costs of service will be taxed against the personally served Defendant pursuant to Rule 4(d)(2) of the Federal Rules of Civil Procedure, unless otherwise ordered by the Court.

(9) **If Defendant Arpaio agrees to waive service of the Summons and Second Amended Complaint, he must return the signed waiver forms to the United States Marshal, not the Plaintiff.**

**TEMPSREF**

- 10 -

(10) Defendant Arpaio must answer the Second Amended Complaint or otherwise respond by appropriate motion within the time provided by the applicable provisions of Rule 12(a) of the Federal Rules of Civil Procedure.

(11) This matter is referred to Magistrate Judge Deborah M. Fine pursuant to Rules 72.1 and 72.2 of the Local Rules of Civil Procedure for all pretrial proceedings as authorized under 28 U.S.C. § 636(b)(1).

Dated this 3rd day of September, 2015.

_____
David G. Campbell
United States District Judge

**TEMPSREF**