MGD

**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

Oscar Amaro,

Plaintiff,

v.

Joseph M. Arpaio, et al.,

Defendants.

No. CV 14-02302-PHX-DGC (DMF)

**ORDER**

Plaintiff Oscar Amaro, who is currently confined in Arizona State Prison Complex (ASPC)-Lewis, brought this civil rights case pursuant to 42 U.S.C. § 1983. (Doc. 18.) Before the Court is Defendant Joseph M. Arpaio's Motion for Summary Judgment for Failure to Exhaust Administrative Remedies, which Plaintiff opposes.[1] (Docs. 38, 56.) The Court will deny the Motion.

**I.    Background**

In his Second Amended Complaint, Plaintiff asserted three counts of deliberate indifference to his safety. (Doc. 18.) Plaintiff alleged that he had been housed in protective segregation at the ASPC-Lewis because he was on the New Mexican Mafia's hit list. (*Id.* at 4-5.)[2] On August 13, 2013, Plaintiff was transferred to the Maricopa

---

[1] The Court provided notice to Plaintiff pursuant to *Rand v. Rowland*, 154 F.3d 952, 962 (9th Cir. 1998) (en banc), regarding the requirements of a response. (Doc. 41.)

[2] The page numbers cited refer to the Court's electronically generated page numbers.

County Fourth Avenue Jail. (*Id.* at 4.) Plaintiff's request to be housed in protective segregation while at the jail was denied, and he was housed in the general population. (*Id.* at 5.) On December 25, 2013, Plaintiff was attacked by several inmates and suffered an abdominal hernia, blurred vision, chronic headaches, pain, anxiety, and weight loss. (*Id.* at 4-7.) Plaintiff alleged, in part, that Defendant Maricopa County Sheriff Arpaio directed his subordinates to deny Plaintiff's request for protective segregation and that Defendant implemented, created, and/or enforced "restrictive [protective segregation] policies[,] practices[,] and/or customs that unnecessarily limit" officers' discretionary authority to grant an inmate's legitimate request for protective segregation. (*Id.* at 11-12.) Plaintiff alleged that he submitted a request for administrative relief, but never received a response and could not appeal to the highest level because he was transferred back to prison before he could exhaust his administrative remedies. (*Id.* at 11.)

On screening under 28 U.S.C. § 1915A(a), the Court determined that Plaintiff stated an Eighth Amendment threat-to-safety claim against Arpaio based on a policy, practice, or custom, and directed Arpaio to answer Count Three. (Doc. 21 at 7.) The Court also determined that Plaintiff stated a threat-to-safety claim in Count One against Defendants Jane and John Doe, but did not order service on these Doe Defendants and permitted Plaintiff to use the discovery process to obtain their names. (*Id*. at 7-8.) The Court dismissed the remaining claims and Defendants. (*Id*. at 6-7.)

**II.     Legal Standards**

    **A.     Summary Judgment**

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The movant bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record, together with affidavits, if any, that it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. If the movant meets its initial responsibility, the burden shifts to the nonmovant to

demonstrate the existence of a factual dispute and that the fact in contention is material. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 250 (1986); *see Triton Energy Corp. v. Square D. Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995). The judge's function is not to weigh the evidence and determine the truth, but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. The court must accept the nonmovant's evidence and draw all inferences in the nonmovant's favor. *Id.* at 255.

### B.     Exhaustion

Under the Prison Litigation Reform Act, a prisoner must exhaust "available" administrative remedies before filing an action in federal court. *See* 42 U.S.C. § 1997e(a); *Vaden v. Summerhill*, 449 F.3d 1047, 1050 (9th Cir. 2006); *Brown v. Valoff*, 422 F.3d 926, 934-35 (9th Cir. 2005). The prisoner must complete the administrative review process in accordance with the applicable rules. *See Woodford v. Ngo*, 548 U.S. 81, 92 (2006). Exhaustion is required for all suits about prison life, *Porter v. Nussle*, 534 U.S. 516, 523 (2002), regardless of the type of relief offered through the administrative process, *Booth v. Churner*, 532 U.S. 731, 741 (2001).

The defendant bears the initial burden to show that there was an available administrative remedy and that the prisoner did not exhaust it. *Albino v. Baca*, 747 F.3d 1162, 1169, 1172 (9th Cir. 2014); *see Brown*, 422 F.3d at 936-37 (a defendant must demonstrate that applicable relief remained available in the grievance process). Once that showing is made, the burden shifts to the prisoner, who must either demonstrate that he exhausted administrative remedies, or "come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Albino*, 747 F.3d at 1172. The ultimate burden rests with the defendant. *Id.*

If summary judgment is denied, disputed factual questions relevant to exhaustion should be decided by the judge; a plaintiff is not entitled to a jury trial on the issue of exhaustion. *Albino*, 747 F.3d at 1170-71. If a court finds that the prisoner exhausted administrative remedies, that administrative remedies were not available, or that the

failure to exhaust administrative remedies should be excused, the case proceeds to the merits. *Id.* at 1171.

**III.  Facts Relevant to Exhaustion**

The following facts are taken from Defendant's Statement of Facts (DSOF) (Doc. 39) and Plaintiff's Statement of Facts in Support of Opposition (PSOF) (Doc. 57).

**A.  MCSO's Grievance Process**

Maricopa County Sheriff's Office (MCSO) Policy DJ-3, Inmate Grievance Procedure, and Section 13 of the Rules and Regulations for Inmates, govern the grievance procedure at Maricopa County jails. (Doc. 39 ¶ 1.) MCSO provides all inmates with the grievance procedures at the time of booking into jail.[3] (*Id.* ¶ 3.) The Inmate Grievance Procedure in effect as of December 6, 2013, requires an inmate to first submit a grievance form to "detention personnel" within 48 hours.[4] (*Id.* ¶ 2.) If the detention officer cannot resolve the issue, the grievance is forwarded to the shift supervisor. (*Id.* ¶ 2.) If the shift supervisor is unable to resolve the grievance within 7

---

[3] Plaintiff disputes DSOF ¶ 3 because he "cannot possibly verify one way or the other as to whether or not MCSO provides EVERY jail inmate with a copy of the grievance procedures at the time that they are booked into jail," but he admits that he received a copy of the MCSO Inmate Rules and Regulation sometime between August 14, 2013 (the date of his booking) and January 28, 2014 (the date of his release). (Doc. 57 at 2 ¶ 3.)

[4] Plaintiff disputes DSOF ¶ 2, asserting that the grievance procedure states that an inmate must first submit a grievance form to a shift supervisor within 48 hours of the event being grieved. (PSOF at 1 ¶ 2, citing DSOF Ex. 1, Att. 1 (Inmate Grievance Procedure, Eff. Date Dec. 6, 2013).) Plaintiff is correct that the 2013 version of the policy directs an inmate to submit the form to a shift supervisor. (*See* Doc. 40 at 15.) The Court notes that DSOF ¶ 2 cites only to Exhibit 1, Attachment 1, which is 22 pages and includes both a 2007 and a 2013 version of the Inmate Grievance Procedure. Defendant fails to direct the Court's attention to where those policies state that an inmate is to submit a grievance to "detention personnel." Nor does Defendant explain why it included the two different versions of the policy, or which one is applicable to Plaintiff's claim. This briefing does not meet the level of professionalism the Court expects. Nevertheless, which version of the policy applies here does not impact the Court's decision, and the Court will not further note where Plaintiff's disputes appear to focus on differences between the two versions.

- 4 -

days, the shift supervisor forwards the grievance to the Shift Commander.  (*Id.*)  If the Shift Commander is unable to resolve the grievance within 7 days, the Shift Commander forwards the grievance to the Bureau Hearing Unit, where the Bureau Hearing Sergeant will have 11 working days "to resolve and return." (*Id.*)  If the grievance is not resolved by the Hearing Sergeant, the inmate is informed of his right to appeal to the Jail Commander "**within 24 hours of the hearing sergeant's response**." (*Id.* (emphasis in original).)  The Jail Commander has 7 working days to respond to an "Institutional Grievance Appeal." (*Id.*)  If the Institutional Grievance Appeal is not resolved by the Jail Commander, the inmate is informed of his right to appeal to the External Referee "**within 24 hours of receipt of the jail commander's response**." (*Id.* (emphasis in original).)  An inmate's "External Appeal" is forwarded to the Bureau Hearing Commander, who has 7 calendar days to review it and determine whether the grievance goes forward or if that is the end of the grievance process.  (*Id.*)  If the grievance goes forward, it is sent to the External Referee, who has 25 calendar days to respond.  (*Id.*)  The External Referee's response is sent to the Bureau Hearing Unit, which then forwards the response to the inmate.  (*Id.*)

### B. Plaintiff's Grievances

According to Defendant, Plaintiff submitted two grievances while he was incarcerated at the Fourth Avenue Jail.  (Doc. 39 ¶ 5.)  MCSO Sergeant James Maultsby states that he searched MCSO's inmate grievance records for information regarding Plaintiff while he was incarcerated between August 14, 2013 and January 28, 2014.  (Doc. 40 at 2 ¶ 7, citing Attach. 3 (Plaintiff's "Grievance List/Report").)  Maultsby asserts that Plaintiff submitted two grievances, but only exhausted one of those grievances, which was related to medical charges on Plaintiff's personal account.  (Doc. 40 at 2 ¶ 8; Doc. 39 ¶ 6.)  That grievance, #13-10310, was submitted to an External Hearing Officer, "thereby exhausting the grievance." (Doc. 40 at ¶ 8.)  Maultsby states that "our records show [Plaintiff] failed to exhaust his administrative remedies

concerning his allegations which are the basis of the Second Amended Complaint." (*Id*. ¶ 9.)

In addition to Maultsby's Declaration, Defendant submitted one document as evidence of the grievances Plaintiff filed while in MCSO custody. (Doc. 40 at 33.) That document is a single page, possibly from a log book, and appears to contain summaries of two grievances by Plaintiff; Defendant did not provide either of the actual grievances referenced in the log. The first item in the log is Plaintiff's Grievance #201310310, dated September 17, 2013. (*Id*.) It describes the grievance as "Inmate Disputes Medical Service Charges" and concludes with an entry stating: "On 11/12/13, Inmate Signed for and Received External Response to Grievance." (*Id*.) The other item is Plaintiff's Grievance #201401398 dated January 25, 2014. (*Id.*) The summary of this grievance reads: "Claims he was assaulted by 3 inmates when he came to jail." (*Id.*) The only other notation regarding this grievance is "Released 1/28/14." (*Id.*)

In a declaration, Plaintiff states that that he filed a grievance with the Shift Supervisor at the Fourth Avenue Jail on December 26, 2013. (Doc. 57 at 9 ¶ 9, citing Attach. 5 (Doc. 57 at 27).) That grievance, a copy of which is attached to Plaintiff's Declaration, addressed the December 25 assault on Plaintiff by other inmates and Plaintiff's request for protective segregation when he arrived at the jail. (*Id*. at 27.) On December 27, 2013, Plaintiff was transferred to the Lower Buckeye Jail (LBJ) where he was "finally housed in [protective segregation]." (*Id*. at 9 ¶ 10.) On January 23, 2014, a Sergeant at the LBJ instructed Plaintiff to re-file the grievance he had submitted at the Fourth Avenue Jail on December 26, 2013; Plaintiff re-filed his grievance that same day, noting on the grievance that the Sergeant had instructed him to re-file the grievance. (*Id.* ¶ 11, citing Attach. 6 (Doc. 57 at 29.) The grievance was returned to Plaintiff on January 28, 2014 with a case number (#14-01398), but nothing else. (*Id.* ¶ 12, citing Attach. 6 (Doc. 57 at 29).) Plaintiff filed a three-page grievance appeal to the Jail Commander that day. (*Id.* ¶ 13, citing Attach. 7 (Doc. 57 at 31-33).) In his grievance appeal, Plaintiff wrote that he had no choice but to file an appeal because he had received

no response to his original grievances filed on December 26, 2013 and again on January 23, 2014 "per Sergeant's instruction." (*Id*. at 33.) On January 28, 2014, Plaintiff was released from the custody of the MCSO and "no additional administrative remedies were available" to him after that date. (*Id.* ¶ 14.)

### C. Discussion

Defendant has established that the jail had an administrative remedy procedure and that Plaintiff was aware of the procedure. The Declaration of Sergeant Maultsby asserts that Plaintiff exhausted one of his grievances, which related to medical charges, but that MCSO "records show he failed to exhaust his administrative remedies concerning his allegations which are the basis of the Second Amended Complaint." (Doc. 40 at 2 ¶¶ 8-9.) Maultsby does not cite to any evidence in support of the assertion that Plaintiff failed to exhaust his administrative remedies. Defendant has not produced either of the grievances referred to by Maultsby, and neither Maultsby nor Defendant provide any explanation of the document attached to Maultsby's Declaration, which appears to be from a grievance log. No one asserts that the one-page document is a complete list of all grievances filed by Plaintiff while he was incarcerated by MCSO.

Defendant's evidence is insufficient to show that Plaintiff failed to exhaust his administrative remedies. *See Wyatt v. Terhune*, 315 F.3d 1108, 1120 (9th Cir. 2002) (finding the defendants' evidence inadequate where affidavit describing inmate appeals process does not state whether the plaintiff exhausted his appeals and there was "no evidence in the record establishing that the 'Appeal Record' is what defendants say it is"), *overruled on other grounds by Albino*, 747 F.3d 1162; *see also* Fed. R. Civ. P. 56 advisory comm. note to 2010 amendments (movant must cite to particular parts of the materials that support its position, and "[m]aterials that are not yet in the record— including materials referred to in an affidavit or declaration—must be placed in the record").

Even if Defendant met his initial burden, Defendant has failed to rebut Plaintiff's evidence that he effectively exhausted his administrative remedies and that administrative

remedies were unavailable once he left the custody of MCSO. Defendant argues that there is no record of Plaintiff submitting a grievance "prior to the December 25, 2013 assault which is the basis for this lawsuit, regarding denial of a request for protective segregation or fully exhausting the process to the final step." (Doc. 39 ¶ 7.) Plaintiff responds that he did submit a grievance on December 26, 2013, and he was told to re-submit his grievance on January 23, 2014. (Doc. 57 at 9 ¶¶ 9, 11.) Plaintiff produced a copy of the grievance that he says he submitted on December 26, 2013 and re-submitted on January 23, 2014. It states:

> On 12-25-13 I was ass[au]lted by 3 inmates. When I came to the county jail I told the lady on my initial classification I need (Protective Segregation). She still housed me in GP! Now Officer Graham (2C2 House) let 2 inmates out of their cell to ass[au]lt me. These 2 inmates had weapons and w[]ere locked down. If you check JMS (Jail Management System) cameras on 12-25-13 on second shift you'll see the whole assault. I am request[ing] to resolve this by classification lady being terminated and Officer Graham being terminated for his reckless [e]ndangerment of my life.

(Doc. 57 at 27.) The original date on the grievance is crossed out and illegible and is replaced with "1-23-14." (*Id.*) The final two lines on the grievance state "SGT. on 1-23-14 at 2:00 am told me to file a new gr[ie]vance cause the one at 4th Ave was never filed. SGT that walked/worked T24B cause I filed orig[i]nal grievance at 4th Ave . . . on 12-26-13." (*Id.* (ellipses in original).)

Defendant replies that "there is no evidence that [Plaintiff] ever filed a timely grievance of the December 25th incident as the grievance has not been produced by Plaintiff and does not show up in the jail records." (Doc. 58 at 2.) In a footnote, Defendant argues that Plaintiff's grievance "shows both the date of 12-26-13, and 1-28-14, but refers to what a Sergeant reputedly told him on 1-23-14 and Plaintiff dates this document 1-28-14."[5] (Doc. 58 at 1 n.1.) Defendant does not explain the significance of these arguments and the Court will not guess as to Defendant's meaning. Defendant has

---

[5] The date on the grievance next to Plaintiff's signature is January 23, 2014, not January 28, 2014.

- 8 -

1  not shown as a matter of undisputed fact that Plaintiff failed to submit a grievance on
2  December 26, 2013, within 48 hours of the assault, as Plaintiff claims.

3  Defendant next argues that the grievance Plaintiff submitted "was for being
4  assaulted, not for a supposed refusal to grant him administrative segregation" (Doc. 38 at
5  7), and that Plaintiff's "request for relief in his January 23rd and 28th grievances (which
6  are the only ones we have a record of) is for two guards to be terminated," which "is not
7  dependent on where Plaintiff is housed." (Doc. 58 at 2-3.) These arguments are without
8  merit. Plaintiff's grievance clearly relates to both the assault and his prior request for
9  protective segregation: "When I came to the county jail I told the lady on my initial
10 classification I need (Protective Segregation). She still housed me in GP!" (Doc. 57 at
11 27.) As relief, Plaintiff asked, in part, that the "classification lady" be terminated. (*Id.*)
12 This grievance put jail officials on notice that Plaintiff was complaining about his
13 classification and the failure to put him in protective segregation.

14 The purpose of the exhaustion requirement is to "afford corrections officials time
15 and opportunity to address complaints internally before allowing the initiation of a
16 federal case." *Brown*, 422 F.3d at 935 (quoting *Porter*, 534 U.S. at 525). Plaintiff met
17 this requirement. A grievance need only provide enough information to allow prison
18 officials to take the appropriate responsive measure. *See Griffin v. Arpaio*, 557 F.3d
19 1117, 1121 (9th Cir. 2009); *Johnson v. Johnson*, 385 F.3d 503, 522 (5th Cir. 2004) ("the
20 primary purpose of a grievance is to alert prison officials to a problem"). Indeed, in this
21 case, jail officials did take responsive measures by putting Plaintiff in protective
22 segregation two days after he was assaulted.

23 Defendant argues in his Reply that "Plaintiff did not appeal his failure to get a
24 response within seven days as required by the rules, thus affirming that he did not exhaust
25 his remedies." (Doc. 58 at 2, citing "page 24 of 33 of the Declaration of Sergeant James
26 Maultsby.") Defendant further argues that "[t]his failure to grieve his not getting a
27 response applies (1) to his alleged December 26th grievance, (2) to his January 23rd
28

grievance, and (3) to his January 28th grievance which is noted in Attachment 3 of the Declaration of Sgt. Maultsby." (*Id.*)

Defendant does not explain why the "Inmate Institutional Grievance Appeal" filed by Plaintiff on January 28, 2014 is not an appeal of the failure to receive a response. In that appeal, Plaintiff specifically states that he has "no choice but to file these institutional grievance appeals to the jail commander due to the failure of a response to my original grievance filed on 12-26-13 and again on 1-23-14 per sergeant's instruction." (Doc. 57 at 33.) Therefore, Plaintiff did file an appeal of the failure to respond to his December 26, 2013 grievance, which he re-submitted on January 23, 2014. Nor does Defendant cite to any rule that requires an inmate to appeal the failure to receive a response within seven days. "[P]age 24 of 33 of the Declaration of Sergeant James Maultsby," Defendant's only citation on this issue, is merely a flow chart of the grievance process; it says nothing about an inmate needing to appeal the failure to receive a response within seven days. (*See* Doc. 40 at 24.) Although not obligated to do so, the Court has reviewed the two versions of the Inmate Grievance Procedure provided by Defendant and finds no language requiring an inmate to appeal the failure to receive a written response. For example, the 2007 version states that "[a]n inmate who has not received a written response to his grievance within seven calendar days of submitting it or having it submitted to the shift supervisor, *may* submit an Institutional Grievance Appeal through the Hearing Unit, with the pink copy of the original grievance attached, unless he has agreed in writing to an extension of time." (Doc. 40 at 6 (emphasis added).) The 2013 version states that "[a]n inmate who has not received a resolution or a written response to his grievance within seven working days *may* submit an Inmate Request Form directly to a shift commander . . . ." (*Id*. at 17 (emphasis added).) Neither version requires that an inmate file an appeal if he does not receive a response to a grievance in order to exhaust his administrative remedies.

Plaintiff argues that after re-submitting his grievance on January 23, 2014, and then his grievance appeal on January 28, 2014, he was released from MCSO custody and

"no additional administrative remedies were available to [him] after 1-28-2014." (Doc. 56 at 4.) Defendant responds "that is clearly not true as he could have appealed the failure to grant his request and continue to seek termination." (Doc. 58 at 3.) Defendant does not explain how Plaintiff could have continued the MCSO grievance process after he was released. The Court finds that administrative remedies were effectively unavailable to Plaintiff once he was released from MCSO custody.

Defendant argues for the first time in his reply that Plaintiff failed to respond to a Request for Admissions that grievance #14-01398 "is the only grievance regarding 'refusal of administrative segregation' that you filed while in jail, from your booking date of August 13, 2013 to your release to ADOC on January 28, 2014." (Doc. 58 at 4.) Defendant contends that because Plaintiff failed to respond to this Request for Admission, he has "judicially admitted that his only grievance re administrative segregation, which is the sole basis for his lawsuit, was filed about a month beyond the appropriate deadline." (*Id.*) Because Defendant improperly raised this argument for the first time in his Reply, the Court need not consider it. *See Padgett v. Wright*, 587 F.3d 983, 985 n.2 (9th Cir. 2009) (per curiam) (the court will not consider arguments raised for the first time in the reply brief); *United States v. Anderson*, 472 F.3d 662, 668 (9th Cir. 2006) (recognizing the general principle that arguments raised for the first time in a reply brief are waived).

Defendant has failed to show that Plaintiff failed to exhaust his administrative remedies. The Court will therefore deny Defendant's Motion for Summary Judgment.

**IT IS ORDERED:**

(1) The reference to the Magistrate Judge is withdrawn as to Defendant's Motion for Summary Judgment (Doc. 38).

(2) Defendant's Motion for Summary Judgment (Doc. 38) is **denied**.

1    (3)    The Court will schedule a hearing by separate order.

2    Dated this 9th day of September, 2016.

*[signature: Daniel G. Campbell]*

David G. Campbell
United States District Judge